MOWER–HOBART CO. v. R. G. DUN & CO.

(Circuit Court, N. D. Georgia.  May 23, 1904.)

No. 1,782.

1. LIBEL—MERCANTILE REPORT—ALLEGATION OF EXPRESS MALICE.

A declaration in libel, based on a report made by defendant, as a mercantile agency, with respect to the financial standing of plaintiff, which stated, inter alia, that plaintiff's account with the bank was "not classed as an entirely desirable one," states a cause of action for the recovery of actual damages, without regard to the question of privilege, where it is further alleged that "the report as a whole was a false and malicious defamation of plaintiff, tended to injure it in its said business,  *   *   * and was craftily and wickedly, falsely and maliciously, so intended and designed," which is a sufficient allegation of express malice.

At Law.  Action for libel.  On demurrer to declaration.

Hoke Smith and H. C. Peeples, for plaintiff.
Walter R. Brown and Ellis, Wimbish & Ellis, for defendant.

NEWMAN, District Judge.  This suit is brought by the Mower-Hobart Company, a corporation doing business in Atlanta, in this district, against R. G. Dun & Co., a mercantile agency.  The declaration alleges that R. G. Dun & Co. conduct what is known as a mercantile agency, with offices located at various points throughout the United States, and with an office at Atlanta, Ga., in said county of Fulton; that part of the business conducted by said R. G. Dun & Co. is to distribute for a consideration, to merchants, dealers, and others, information regarding the standing of persons engaged in trade, their financial worth, credit, character, trustworthiness, and the conduct and condition of their business; that such information is secured and given out by representatives stationed at commercial centers, who secure the same, and distribute it directly or through agents of said firm to its patrons in the form of written or printed slips called "reports"; that said partnership is known as Dun's Commercial Agency, it numbers among its patrons a large proportion of the leading wholesale mercantile establishments of America, and its reports are accepted, and largely influential, and to a great degree regulate and control, commercial transactions in the United States, especially as regards the financial credit and responsibility of merchants.  It is then alleged that on or about July 11, 1902, the defendant gave out to its subscribers a written report upon plaintiff, as follows:

"Mower-Hobart Co.  Office supplies etc.  Atlanta, Ga., Fulton.
   No. 1 Broad St.
"July 11, 1902.
"At present this company is located at 61 Peachtree St.  That place has been leased and they have rented store house at above address, where they intend moving August 1st.
"When requested for statement Mower claimed that they had not inventoried since statement rendered during March to which he referred.  Stated verbally that there had been practically no change, and affairs were in about the same shape as indicated in their last showing.
"The statement referred to was submitted under date of March 24th last, and showed total assets of $18,211.54, with debts of $7,491.9, indicating a sur-

---

¶ 1. See Libel and Slander, vol. 32, Cent. Dig. § 198.

plus or worth of the company of $10,719.55; result of investigation made at the time resulted in conceding the company a responsibility of something like $6,000.

"Just at present the expenses of the company are a little heavier than usual, inasmuch as they will have to pay store rent on two places until Sept. They have keen competition to contend with, and while they appear to be aggressive and attentive, their trade is hardly thought to average up as much as formerly. They carry a nice stock of merchandise, but some of this is consigned. At bank the company is very well known where they have been granted some accommodations, but settlements through this source said to have been slow and altogether the account is not classed as an entirely desirable one. However confidence seems to be manifested in Mower's ability, and a willingness is expressed to indulge him to a reasonable extent. No complaints from the trade at large have come to notice, and in an eastern market one firm states that dealings, including those with predecessors covers a period of about ten years, have with them goods on consignment aggregating $3,000 to $4,000, and say that the account on direct sales average about $300 on usual terms, remittances being made promptly. No exten ions asked. Are owing now about $300 not due. One concern in the local market is found who have handled the account in a small way, and say dealings were satisfactory, though report no recent transactions. The location which they will occupy after August 1st is hardly considered as much desirable as their present quarters, and as a basis for credit the responsibility of the company is not placed at exceeding $5,000 to $6,000 and quoted in fair credit standing.

"7-11-02.                    Rate G. 3. to G. 3½."

This report is taken up in the declaration by paragraphs, and is charged as having been false and malicious. The present hearing is on a demurrer to the declaration. The demurrer and argument of counsel thereon raises the question as to how far the above report is libelous. In my judgment, the only part of the report made by the defendant as to the plaintiff which could in any way be classed as libelous, and intended to injure it, if untrue, is that language which stated that "the account"—referring to the plaintiff's bank account—"is not classed as an entirely desirable one." The remainder of the report does not seem to me to contain anything of which complaint can reasonably be made. The first part of the report states, on authority of a member of plaintiff's company, that its assets are $18,211.54, and its debts $7,491.09, indicating a surplus or worth of the company as $10,000. The Dun Company itself gives the plaintiff company a credit or responsibility of something like $6,000. Any one could judge for themselves from the amount of its assets and liabilities what credit it should have. The statement of the Dun Company as to $6,000 of responsibility is evidently merely an expression of its own opinion as to the extent of credit such an amount of assets and liabilities would justify. The statement in the report as to the change of place of business, the additional expense, and as to consigned goods, are not such as would seem to cause injury or damage to plaintiff. The statement to the effect that "they carry a nice stock of merchandise," and of Mr. "Mower's ability," and as to "remittances being made promptly" for consigned goods, and "no extensions asked," seem all to be complimentary, and such as should be helpful to plaintiff in its mercantile business, rather than otherwise.

The next question is as to how far a report made by a mercantile agency, such as R. G. Dun & Co., is privileged. The general rule with reference to the privilege of a mercantile agency, as gathered from the

authorities, seems to be that communications made by such an agency will be privileged when furnished to those having an interest in the matter, but that the communication will lose its privileged character when furnished to their subscribers generally, and to those having no interest in the standing of the person as to whom the report is made. Erber v. R. G. Dun & Co. (C. C.) 12 Fed. 526; Trussell v. Scarlett, (C. C.) 18 Fed. 214; 18 Am. & Eng. Ency. Law (2d Ed.) p. 1035. It is claimed by plaintiff's counsel, however, that this court should be controlled by the decision of the Supreme Court of Georgia in the case of Johnson v. Bradstreet, 77 Ga. 172, 4 Am. St. Rep. 77. The contention is that that decision is based upon the construction of a section of the Code of Georgia (3840, Code 1895; 2980, Code 1882); but this section, it is conceded, was a codification of the common law. Being so, it is urged by defendant's counsel that it is not controlling in this court. Clark v. Bever, 139 U. S. 96–117, 11 Sup. Ct. 468, 35 L. Ed. 88. In this connection it might be interesting to consider the effect on this question of the decision of the Supreme Court of Georgia in Central Railway v. State, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518; and especially the language used in the opinion by Mr. Justice Cobb, on page 855, 104 Ga., page 540, 31 S. E., 42 L. R. A. 518, as to the statutory character of the present Code of the state. The decision, however, in Johnson v. Dun & Co., was rendered while the old Code was in effect, and before the adoption of the Code of 1895. The questions raised are interesting, but I do not think the effect to be given to this decision of the Supreme Court of the state is very important in the present case, because it is alleged in the declaration that this report was maliciously made. The language of the declaration is:

"The said report taken as a whole was a false and malicious defamation of plaintiff. tended to injure it in its said business, to injure its financial and moral standing and respectability in said business, and was craftily and wickedly, falsely and maliciously, so intended and designed."

The defendant contends that the foregoing is not a sufficient allegation of express malice. I should be unwilling to so hold, in view of the language used, and consequently the case stands with the allegations in the declaration that the defendant stated of the plaintiff that its bank account "is not classed as an entirely desirable one," that this statement was untrue, and that the same was made by the defendant with express malice, and with intention thereby to injure the plaintiff. This, in my judgment, states a cause of action.

It may be remarked here that the only party receiving this report mentioned in the declaration is the R. D. Cole Manufacturing Company, of Newnan, Ga. Whether this company had requested of the defendant a report as to the plaintiff's standing, or whether it was interested therein, does not appear. If that part of the report made by the defendant as to the plaintiff's commercial standing which refers to the bank account, therefore, was false, and was made with express malice, it would seem to justify a recovery of actual damages, whether the defendant has a qualified privilege or not.

With this expression of the views of the court, the demurrer will be overruled, and the case allowed to proceed as herein indicated.